May it please the court, my name is Susan E. Hill and I represent the petitioners, the Medrano family. This is the second time that the family has been before this court, and this all stems from a terrible incident that happened to their daughter, Diana, who was a teenager at the time in El Salvador. I know the court's aware of the record, but basically, briefly, she was kidnapped and ultimately targeted to become the woman or wife of a gang member who was actually serving in prison at the time. She managed to escape. The family fled here. She was threatened and the family threatened if they did not comply. They came here. They were granted protection under convention against torture by the judge. Ultimately, it was overturned on appeal. The family still remains in danger today. They filed a motion to reopen in 2015, demonstrating how country conditions have changed and that they still remain in danger to this day. The basis of the motion to reopen for the changed country conditions was that evidence had come to light now identifying demonstratively that there exists a particular social group in El Salvador, that Diana belongs to that particular social group and that she would be persecuted in the family as well. Is that a changed country condition? It just doesn't sound like it if you use the words. I mean, now we have more information about how women are treated, so the conditions have changed? Conditions have changed, yes, Your Honor. I understand you have arguments that conditions have changed, but it seems strange to say that a condition that has changed is that we have a group that's recognized. Yes, because there's a pattern and a practice against these women, against this group that has emerged. That wasn't there before? There was no evidence, and if there's no evidence in existence to identify the group, and now it is recognized that society recognizes the group and that it's particular and that it has a social distinction. You see why I'm asking, though? I mean, it doesn't seem like a changed country condition. It seems like a changed recognition of what has been there all along. Well, and I understand, Your Honor, and the conditions are inherently tied up in the definition and requirements for a particular social group. That group must be distinct and it must be recognized by society. Now society recognizes that this group exists, so if it does not have the social distinction and the recognition... So what's the group again? It is young women in El Salvador who have been targeted for sexual harm and violence. And that group hasn't been distinct before? It's just been indistinct? Correct, Your Honor. It has not been as distinct. Because of a spike in how these women are treated and the emergence of the pattern... You see, I'm just having trouble with how the people are treated, defining whether conditions are different. How people are treated generally. Well, when a person is treated in a certain manner, that is a condition within the country. These women are now viewed as property. Yes, there was violence against women in the past, but now society recognizes that they're being treated as property, as objects. And they're being used as pawns, in a way, for the gangs to exert influence and control. They do it in three ways. First, they exert their power over these women directly, and they use it to gain status and power within the gang. They also use it in between gangs. But they weren't doing it when they kidnapped her? Or they were? I didn't hear your question. They didn't think like that when they tried to take her? Originally, the judge determined that she was kidnapped for... Now there's a new condition now, right? Yes, the new condition is... The new condition is that we now know something more about the old condition? The new condition is that society now recognizes the group. So the group has evolved. The pattern has evolved, and it now has emerged as a pattern. But it wasn't at the time of the kidnapping? No, it was not. There was not a pattern in practice. So this kidnapping didn't result from the condition that you're talking about? No, the kidnapping originally was motivated for ransom. No, but I mean the threats that she had to go and turn herself in and be a wife and all of that. Yes, the threats were... All of that was not a result of this new condition that now exists down there? Or it was? Well, it... It can't have it both ways. It either was part of that or it wasn't. It seems to me whenever you answer one, it sort of undermines your argument. Well, Your Honor, she was... She was designated for sexual harm. Right. Yes, but society did not recognize that there was a group of people that this was occurring to. Now this is a pattern in practice that has been in place. It's evolving. It is becoming problematic. And now this group... It's similar to when homosexuals, perhaps, were not recognized as being targeted in other countries. And now it's recognized that they are viewed as a separate group and that they are in danger of being targeted. Can I ask on the first go-around, what was the basis for your client's asylum and withholding claims? The basis was... It was very generally articulated. I read through the record. I did not represent them down below, but it appears that it was based upon... Really, honestly, it was not very well articulated down below. The asylum application just said, see the respondent's or the applicant's statement, and the statement didn't articulate a specific social group. And I believe that is a part of the problem of this case and why it does need to be remanded to have that social group articulated in light of the new pattern in practice that's existing. Okay, but so your position is that... That's 2007, yes. But at that time, this particular social group that you're alleging now, there just wasn't enough evidence to support. It was perhaps more amorphous because now, as the evidence that was submitted with the motion to reopen demonstrated, young schoolgirls now view this as part of everyday life, that they belong to this particular social group. Parents are scared. They can't even speak up. So violence generally was existing, yes, but now society recognizes that these particular victims are singled out for significant harm as a member of this group because they are viewed as property and objects. And that is just the way society is moving forward at this point after this case was last in front of the judge and the BIA. The BIA only said that there were no changed country conditions. As it's been argued, this is rolled up inherent to the particular social group definition. The BIA did not pass judgment on the existence or the definition of this particular social group. Therefore, the matter would need to be remanded back to the judge to make some further factual findings about the particular social group. I see I have some time remaining. I'd like to reserve if there's any questions. Okay, if we do so, let's hear from the government. Good morning, Your Honors. I appreciate Your Honor's flexibility about the argument in the other courtroom. It may please the Court, Andrew Nzinga on behalf of the Attorney General. The Supreme Court has long recognized that finality is an important part of this process. Petitioners could have appealed the immigration judge's denial of asylum long ago. They did not. They could have filed a timely motion. That looks like a pretty huge mistake, counsel, in retrospect. I'm not sure I remember another case since I've been on the Court, and that's 15 years in which an IJ has granted a CAT claim. Well, I can't give you specific cases, but we do see it. We often actually see it. And I'm just telling you that in all the years that I've been reviewing these cases, I don't remember a grant of CAT. Well, Your Honor, we wouldn't see a grant of CAT because there wouldn't be a PFR normally, because it wouldn't have a final order of removal. So this Court wouldn't have jurisdiction if a person were not able to do it. Well, we wouldn't see the case as long as the government didn't appeal such a thing and prevail before the BIA. Correct. That's the only time separate courts see it. So this Court will never see a grant of CAT. That's the end of the case. Well, where the government acquiesces in it or loses before the BIA. Well, the Department of Homeland Security has a right to appeal as any charge. Sure. I'm not contesting it, counsel. I'm just telling you that it's unusual. Well, I think the difficulty about the notion of unusual, we have to look at the context in which we know it. I'm sure a Department of Homeland Security attorney would say, well, I've seen it. And, in fact, we do see it. We actually often see where someone's granted CAT or withholding and they want asylum. So they actually file a PFR from the denial of asylum. So they could have appealed. Are you suggesting that this is sort of a way around the fact that they really didn't litigate very vigorously the asylum claim the first time it went around? Well, ultimately that would appear to be the case. That's not what the agency found. But, ultimately, what they want is a redo of the prior case. And the Supreme Court has said, look, we need finality here. Aliens have a good reason to want to seek reopening. What about the concern that the BIA didn't explain what it was doing very well? Well, under all of them. It is a little terse. Some of it deals with CAT, which is not the issue, right? Well, they asked for CAT, Your Honor. Not on this one. Not on the reopening. They asked for reopening, Your Honor. And the difficulty is when you say, I want asylum, what's interesting about that, Your Honor's concern, though, is if the agency hadn't addressed CAT, I would be up here arguing why the agency was right not to address CAT. In any event, one way or the other, the CAT's not before us right now, right? Well, it's a motion for changed country conditions because it's untimely. So that's about the sort of whole kit and caboodle. First of all is we need an extensible timeline. There's a lot of these immigration cases before us, and I may be confusing it with another one. But I thought this was the one where they asked for reopening based on asylum or withholding. That's the title. There's no mention of CAT in there. Well, then we can ignore CAT. Okay, so if you put – oh, sorry. The problem is that the agency referred to CAT. I mean, the agency misread the petition. We're not off to a good start when the BIA says we're going to deny your petition for CAT when they haven't asked for CAT. Well, Your Honor – We're not reading for comprehension at the BIA level on this one. Your Honor, the agency tends to read those motions broadly for good reason. I understand that. I only meant to say that it's a very slim rationale, and part of it deals with CAT, which whether it was okay to do or not, I don't have any problem with their saying it. But it doesn't support denial for asylum. It deals with CAT. So if you take that sentence away and just put it aside for a second, it's pretty short. I mean, it's just four or five sentences, right? And I'm just wondering whether under the precedence of this circuit, that's enough of an explanation for that kind of a decision. Well, Petitioner has not suggested in the opening brief that it must be remanded because the agency decision is insufficiently short. In fact, they tend to – Well, I don't mean that it's insufficiently short. I mean insufficiently. They do argue that it doesn't sufficiently explain what's going on, or do they not? Well, they asked for, in fact, this Court to read the Board's decision really broadly and to suggest that they actually reach cognizability of the particular social group when the agency said nothing about cognizability. But the reason that, as the Board said, the evidence here is limited. As Your Honor said, there's a now, and Petitioner keeps saying now, but what we need is a then. And what is the then? How many times has Petitioner referenced the kidnapping of Diana? Tragic, ugly, disgusting. The country has long suffered from an endemic of violence. This Court has long seen these cases. There does appear to be a shift in emphasis in the State Department's country reports. Now, I cheated just a little bit because I looked at the most recent ones, and there is a change from 2014, which is the ones that were cited, I think, here. If you look at 2015, 2016, it is clear that the State Department has expressed much greater concern about the status of women in El Salvador. Well, and this is the nature of Buff and Allen. Petitioner can file another motion to reopen if they so desire. After this Court denied the last petition, then they, a couple months later, filed a motion to reopen. If Petitioner wants to file another motion to reopen, they may. But, I mean, as Your Honor is well aware, and Your Honor knows I have to say, the Court's review is constrained to the record evidence. This is not to change country conditions to today. But even to the reports that they cited, there is a change from what was originally before the Board. Well, no. Rape and violence towards women was widespread. And what's the big cite they provide? They provide the cite to the country report saying how widespread it is now, except the country report then says widespread. Not like in, I agree with Judge Bybee, there is a pretty dramatic increase in violence against women documented between, I think it's 2007 and 2013, whatever the dates of the two reports are. What's that, 2009? 2009 to 2013. 13 or 14, right? Yes, Your Honor. Yeah, I mean, but even in that short span, there's a fairly dramatic increase documented between those two reports. It's not like it just stayed the same. Well, Your Honor, I think the difficulty is Petitioner needs to provide cites to record evidence to say. She provided the reports. And I'm saying I look at the report from the original hearing, and I look at the report on the motion to reopen, and there's a huge difference, a huge increase just even in that short time frame. And where is the cite by Petitioner? What the motion to reopen fails to do is what was the then? The then. The then is the original State Department country conditions report. And where is Petitioner's discussion of the then? What we need is. I just told you, it's the original report that was submitted on the first go-round. That's the then. And this is the now, the country conditions report they submitted with the motion to reopen. We compare those two. And I'm just listening for a response from you. I read that as a very dramatic increase between time one and time two. Are you saying that there's no increase? Well, the difficulty, Your Honor, is Petitioner hasn't given me a cite to which I can respond. You didn't read the report? Petitioner has the burden of proof of persuasion. She gave you the reports. Where? She gave you the. In the motion to reopen. Yes, she attached it to the motion to reopen, right? And the prior reports, Your Honor. Again, we need a. We need a. We have them. We need. They emphasize the now. But what does change require? Wait, wait. Just maybe we're not communicating. Don't we have the original State Department? Or not the original, but the whatever it was, 2009, you said? In the prior asylum proceedings when this claim was already being adjudicated. Right. We have that report. Yes. That documents the conditions that existed at the time of the original IJ hearing. Yes. Those are in the report. Okay. Why isn't that the then? Well, Petitioner needs to tell us what was the dramatic increase from. We can't keep saying dramatic increase without. Counsel, you're. I'm sorry. You keep arguing about what was in the record. Judge Watford has told you what was in the record, at least in our view. You're arguing that they weren't sufficiently didactic in their. No. In their argument. I don't consider that a terribly effective response. Well, Your Honor, it's not about being didactic or being. Well, in my case, if you're suggesting I'm being pedantic. It's not about that, Your Honor. What it is, is I can't answer what the change is from when Petitioner doesn't tell me where the change is from. I need to cite. You're just saying you can't read the reports and do the comparison like we have tried to do? Well, Petitioner has the burden of proof of persuasion. I can't respond to an argument that Petitioner has never made. And what do the country reports say? Well, in the 28th day we filed, what was the point? They cite in their brief that rape and violence was widespread. They say that. And that's what they quote from the country report. So to the extent I can respond to it, because the only report, you know, that they cite to now is the then. And what did the then say? Rape and violence is widespread. No, but I'm just disagreeing with that. We have numbers. I don't have them on the top of my head. But we have numbers in the reports that are quite dramatically different between the then and the now. Again, the difficulty is, Your Honor, if Petitioner would like to tell me where that is, I could respond. I mean, I could tell you where it is if I felt like taking the time. Counsel, didn't you provide us with the 28-J letter with a comparison of these reports? I did. So you knew exactly where they were. Right. You cited them yourself. Unfortunately, you didn't cite them in your brief to us. You cited them in a 28-J letter that came in this week. Well, Petitioner has never. The difficulty, again, Your Honor, the government doesn't have the burden of proof of persuasion. I understand, Counsel, but you seem to be arguing sort of a willful blindness to the evidence that's in front of you. I have to say it's not effective, at least as to this judge. I appreciate the honor. What about the letter from the son and the brother who still remains in El Salvador? Why doesn't that reflect that there's more? I take from this excerpt by the BIA, and it's pretty terse. Part of it, they say, The evidence of gang violence and police corruption doesn't demonstrate that the respondents have fears that differ from the populace as a whole. And presumably it doesn't differ from the populace as a whole any more than it did before, and so that there's not a change in circumstance. They don't exactly say that, but that's the inference. But before that, they talk about this letter from the son and the brother who are still there. Wasn't there further persecution that is related to this particular petitioner that has been added? Well, Your Honor, I see my time is up. There actually is a little bit longer of an answer, but it's two parts. I'll try to give it as briefly as possible. First of all, what is the particular social group they've alleged, young Salvadoran women who have faced harm? What is Henry? Henry is a man. Right. How is it material? But it does suggest that there is some targeting of the family and that Diana in particular might be at risk if she returns to El Salvador. But what does Henry's statement actually say? Gangs are targeting me. Well, this is the other sort of issue. They've also provided evidence that the house was burned down. Previously. It was burned down previously at the prior hearing. They could have, again, we're not relitigating. Petitioner wants to relitigate. So the house was burned down. That's what the statement said. It was burned down. And Henry says he is elsewhere where he doesn't go outside and he doesn't attend school because he fears for his life. Well, and that's the second part of the answer to Judge Rogers' question is the issue that Petitioner hasn't raised here and doesn't really address, which is Zatino, the discourse decision in Zatino about nexus. Petitioner, you know, fear of gangs is unfortunate because it's widespread. We've known it's long widespread because the court has seen it from Zatino in 2010. But fear of gangs is not a basis for asylum. Right. But what the BIA said was that these folks don't have any greater fear than anybody else in the population in El Salvador. And when we have a family that has been previously targeted and left, and we have a member of the family who has returned and continues to believe that he is a target and that he's in hiding and doesn't feel free to go out on the streets, then that suggests that it may be something peculiar to this family. Well, again, the difficulty is Petitioner sort of argues in the brief suggesting somehow the prior decisions are somehow relevant. They're not. Because if Petitioner had filed a timely motion to reopen, then we wouldn't be talking about changed country conditions. What we need is a change in country conditions. The fact that Henry has been targeted by gangs, and it's a very general statement. The timely motion to reopen could have been filed within what time? Ninety days. Ninety days. You had a whole three months to figure that out. That was Congress's decision, Your Honor. That wasn't the executive branch's decision. Congress following, you know, because the Supreme Court's decision in Voodoo and Doherty, that was when it was purely a regulatory thing. That was 90 days. Then in 1996, President Clinton signed a VERA and said 90 days, that's a statutory requirement. This is not something that's being arbitrarily created by the executive. This was Congress. And the Supreme Court recognized that 90 days about finality is important. And then you also have the problem of nexus. They don't address Latino ever. Latino is a preeminent case. So despite the unfortunate nature of the past harm, there's no material change in country conditions. And we'd ask the court to deny the petition. Okay. Thank you, counsel. As for identifying the changes in the country conditions, pages 7 and 8 of the petitioner's opening brief do list those in quite detail, and I can go through them. The murder rate shot up in May of 2014, more than double from that time of the last year. A 56% spike for that year, 2014 alone, from the beginning of the year to the time of the report. Rape is a weapon to terrorize the community. That was page 55 of the administrative record, and that was identified by Catholic Charities. Those are across-the-board changes, though, right? This is particular to El Salvador and how society across the board. Those numbers don't apply to the likelihood that she'll be affected more than anyone else in the country. It's part of the those first two at the murder rate are part of the larger tapestry, but specifically. Yeah, well, that's what I'm wondering, how that's relevant when you're talking about changed country conditions. Because you're talking about changing a condition that because it's across this I take from the it's kind of opaque reasoning, but if you keep parsing it, it starts to make more sense. The idea in the BIA's decision appears to be that when you're talking about an increase in something, which by itself is not enough, it's not a material changed country condition. So if you increase the murder rate across the board, and across the board murder rates are not enough, then an increase of something which categorically is not enough is not a changed country condition. That seems to be what they're saying. I agree with you. It's not as clear as it might have been. But what's wrong with that argument, if that's their argument? It doesn't seem to be answered by saying, oh, but they really went up. The whole idea is the thing that went up categorically is not enough. Well, the more pertinent information is the fact that sexual violence is normalized and accepted by the community. That was a finding made by Catholic Charities. It's an everyday part of life for schoolgirls. That was listed in page 5. Does that mean that all women from El Salvador now have a right to come to the United States under asylum? That's a general refugee program. Is that what you're arguing? No, Your Honor. It's for those who have been targeted for the sexual violence, and as in the petitioner's case, they refuse to undergo that new normal, that new practice and pattern that the gangs are inflicting to increase terror in their communities. So society now recognizes, and again, page 7 and 8 of the brief, it lists all of these new conditions and how society is now viewing and coming to grips with how especially their young girls are being objectified and considered to be property, not just that they're at a risk of harm like the rest of the community may be, but they in particular are viewed as property and the gangs can do anything they want with them and there is nothing that society is going to do in order to rescue them or help them or have any power to change. What's your response to the government's point that to the extent that you provided the letter from Henry about the fears that he has, that you were limited to seeking reopening within 90 days? I'm sorry, I didn't understand? Well, the government said that you could have reopened within 90 days of the prior decision as to for new evidence about the targeting of this family. So the evidence about Henry being in hiding and fearing for his life and so on is not relevant to the claim that you're making on reopening. It is relevant as far as it goes towards the danger they would encounter. It perhaps may not be relevant as far as within the 90-day deadline, but the broader picture is how society now views this particular social group. Okay, but then Henry's daughter is irrelevant to that because he's male. Henry indicates that he still feels in danger, which indicates that the family is still in danger, yes. Right, the government's point was that if you were going to make that argument, that's not really a changed country condition and you had 90 days under Congress's rules to file the motion to reopen. Yes, I would concede that Henry's letter does not articulate the particular social group, but it is part of the ongoing danger that they still do fear. Okay, thank you, Counsel. Thank you. All right, Medrano-Lopez v. Sessions is submitted. Thank you, Counsel.
judges: Rogers, Bybee, Watford